1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| GLOBAL DISPOSAL REDUCTION SERVICES, INC.,<br><br>                                    Plaintiff,<br><br>v.<br><br>ALLIED WASTE SYSTEMS, INC., d/b/a REPUBLIC SERVICES of SAN DIEGO,<br><br>                                    Defendant. | Case No.:  23-cv-582-GPC-KSC<br><br>**ORDER**<br>**(1) DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br>**(2) GRANTING PLAINTIFF LEAVE TO AMEND THE COMPLAINT**<br>**[ECF No. 15]** |

Currently pending before the Court is Defendant Allied Waste Systems, Inc.'s Motion to Dismiss, ECF No. 15, Plaintiff Global Disposal Reduction Services, Inc.'s First Amended Complaint ("FAC"), ECF No. 13.  Plaintiff has responded in opposition, ECF No. 17, and Defendant has filed its reply, ECF No. 18.

Pursuant to Civil Local Rule 7.1(d), the Court found the matter appropriate for a decision without oral argument and vacated the hearing scheduled for August 4, 2023.  ECF No. 19.  For the reasons that follow, Defendant's Motion to Dismiss is hereby DENIED IN PART and GRANTED IN PART.  Plaintiff is GRANTED LEAVE TO AMEND.

## I.    BACKGROUND AND PROCEDURAL INFORMATION

This action arises from a purported breach of contract between the parties.  Plaintiff Global Disposal Reduction Services, Inc. "negotiates contracts with waste disposal providers" to haul waste for its customers.  First Amended Complaint ("FAC") ¶ 6. Defendant Allied Waste Systems, Inc., doing business as Republic Services of San Diego, is one such waste disposal provider.  FAC ¶¶ 6–7.

### A.    Master Customer Service Agreement

In August 2021, Plaintiff and Defendant entered into a Master Customer Service Agreement ("Service Agreement") whereby Defendant agreed to be the exclusive waste disposal provider for roughly 125 of Plaintiff's customer locations listed in Schedule A of the Service Agreement.  FAC ¶¶ 8–9, 18; ECF No. 13-1 at 2, 7.[1]  The Service Agreement runs for a 36-month term with an effective date in June 2021, subject to an automatic monthly renewal thereafter.  ECF No. 13-1 at 2.  In relevant parts, the Service Agreement has provisions for making payments, rate adjustments, payment upon early termination, and excusing performance. *Id.* at 3, 5.  Section 6, regarding payment, instructs that Plaintiff shall pay Defendant "for the Services and equipment furnished by [Defendant] at the rates provided in Schedule A." *Id.* at 3.  Plaintiff is obligated to "pay all taxes, fees, and other governmental charges assessed against or passed through to [Defendant]," and instructed to "pay such fees as [Defendant] may impose from time to time by notice to [Plaintiff] (including, . . . late payment fees, administrative fees and environmental fees), with [Defendant] to determine the amounts of such fees in its discretion up to the maximum amount allowed by Applicable Law." *Id.*  Plaintiff is supposed to pay Defendant "within 20 days after the date of [Defendant]'s accurate and correct invoice." *Id.*

Section 7, concerning rate adjustments, permitted Defendant to "increase the rates

---

[1] Page numbers are based on CM/ECF pagination.

annually by" 3%. *Id.* Defendant could increase its rates for many reasons, including due to "increased fuel costs; . . . increased landfill disposal cost[s]; . . . increased recycling processing & handling cost[s]; and . . . increased or added fees[] passed through from government entities." *Id.* However, "[a]ny increases above the 3% annually must be agreed to by both parties in writing." *Id.*

Section 14, concerning payment upon termination, included a liquidated damages clause whereby Plaintiff's early termination or breach of the Service Agreement could result in Plaintiff owing Defendant the value of up to six months of services. *Id.* at 5. Plaintiff is not obligated to pay liquidated damages in the event of Defendant's breach, though Section 16 explains that Defendant's "failure or delay in performance due to contingencies beyond a party's reasonable control, including strikes, . . . shall not constitute a breach of this Agreement." *Id.* Within Section 16, Defendant is further instructed to "reasonably correct[]" "all service gaps . . . within 7 to 10 days of [Plaintiff] notifying [Defendant]" and to correct "[b]illing errors . . . within 15 30 [sic] days of notification." *Id.*

Schedule A of the Service Agreement, containing the account information for each customer account, has two columns that appear to be labeled "FRF" or "ERF" and a third column that appears to be labeled "FRF/EVR CAP."[2] *Id.* at 7. Most of the cells within these three columns are blank, but roughly 30 rows have at least one cell with a dollar amount, a note, and/or a percentage listed. *Id.* Plaintiff defines "FRF" and "ERF" in the Complaint as Fuel Recovery Fees and Environmental Fees, respectively. FAC ¶ 11. Plaintiff alleges that the blank cells denote which "customer locations are exempt from" these fees and that most cells are blank in accordance with Defendant's "custom and

---

[2] Roughly the bottom quarter of the cells are cutoff such that the letters "F" and "E" are indistinguishable. *See* ECF No. 13-1 at 7.

practice of exempting most properties brokered by [Plaintiff] from such fees." *Id.* "EVR" is not defined in the Complaint, Service Agreement, or Defendant's motion to dismiss. *See id.* (absence); ECF No. 13-1 (absence); ECF No. 15 (absence).

The bottom of Schedule A lists six accounts that "will be honored for DNS service." ECF No. 13-1 at 7. Plaintiff defines "DNS" as "do not service," and alleges that Defendant was required to "credit the bill" for any addresses on the list "because the location was either a delinquent account or an account with no waste bins onsite." FAC ¶ 20.

**B.    Franchise Agreement With County Of San Diego**

In June 2021, Defendant and the County of San Diego purportedly assented to a Non-Exclusive Franchise Agreement ("Franchise Agreement") with an effective date of July 1, 2023. ECF No. 13-2 at 8, 85; *see* FAC ¶ 25. In relevant part, Section 5.10(A)(3) of the Franchise Agreement instructs Defendant that its contracts with customers "shall not require more than 60 days' prior written notice for cancellation in any case where the cancellation occurs not less than six (6) months after the initial term of the contract." ECF No. 13-2 at 47.

Section 10.7 of the Franchise Agreement concerns "parties in interest" whereby "[n]othing in [the Franchise] Agreement, whether expressed or implied, is intended to confer any rights on any Persons other than the Parties to it and their representatives, successors, and permitted assigns." *Id.* at 80.

**C.    Plaintiff's First Amended Complaint**

Plaintiff alleges that it "has performed all conditions, covenants, and promises required on its part to be performed in accordance with the" Service Agreement, but that "Defendant has repeatedly and habitually breached the" Service Agreement. FAC ¶¶ 19–20. Since January 2023, Defendant has allegedly "increased Fuel Recovery Fees and Environmental Fees between 22% and 49% on the locations covered by the [Service Agreement]," amounting to "approximately $95,000 per month more than what the

4

[Service Agreement] allows [Defendant] to charge without [Plaintiff]'s" consent.   FAC ¶ 13.   Plaintiff alleges that "[t]hese large unilateral increases are not permitted by the [Service Agreement], *id.*, and that Plaintiff has timely notified Defendant in writing of the purported billing errors to no avail, FAC ¶ 14; *see* ECF No. 13-1 at 5 (excused performance provision requiring Defendant to correct billing errors "within 15 30 [sic] days of notification").   Instead of correcting the alleged billing errors, Defendant purportedly "threatened to terminate the [Service Agreement] if [Plaintiff] does not pay."   FAC ¶ 14. Plaintiff alleges it has continued to pay the allegedly improper charges so that Defendant will continue to service the customer locations.   *Id.*   Plaintiff further alleges that Defendant has violated Service Agreement Section 16 because Defendant "has repeatedly failed to [timely] haul waste, deliver bins, provide accurate billing, and otherwise respond to customer service issues at multiple locations."   FAC ¶ 15.

Plaintiff alleges that Defendant's CEO has made public statements denouncing the value of brokers like Plaintiff and demonstrating a desire to remove brokers from the equation.   FAC ¶ 7 & n.1.   Defendant's purported breaches of the Service Agreement align with these public statements and Plaintiff alleges they are designed to "cause customers to cancel service with [Plaintiff], and thereby eliminate [Plaintiff] as a consultant or broker." FAC ¶ 16.

Plaintiff lists over a hundred customer locations in which Defendant has purportedly breached the Service Agreement over the course of its service.   FAC ¶ 20.   For all but a few customer locations, Plaintiff alleges that Defendant charged "Fuel Recovery Fees and Environmental Fees greater than permitted by the [Service Agreement]" on . . . invoices from January–April 2023."   *Id.*   For some customer locations, Plaintiff alleges that Defendant has breached the Service Agreement in other ways, such as "[f]ailing to provide prompt and effective customer service to assist with" requested service reductions; "[f]ailing to provide accurate billing" for accounts on the DNS list; "[i]ssuing inaccurate

invoices" and overcharging for equipment; "[f]ailing to provide [required] recycling hauling services" and failing to cure this failure; failing to timely deliver the required waste containers; "[i]ncreasing the base rate more than permitted by the [Service Agreement]" on an invoice; and "[f]ailing to promptly provide damaged waste container exchanges." *Id.* Plaintiff alleges that the customer for one of these listed customer locations terminated its account with Plaintiff due to Defendant's breach "and is now believed to be a direct customer of Defendant because Defendant agreed to withdraw the fee increases that it had charged while the account was with Plaintiff."  FAC ¶ 21.  Plaintiff allegedly lost an additional three customers between December 2021 and July 2022 when "Defendant failed to provide waste hauling service as required by the [Service Agreement]," for the three customers and Defendant "damaged the doors to the waste chute room" for one of the three customers but did not handle the issue in a timely manner.  *Id.*

Plaintiff alleges the following harms have arisen from Defendant's breach of the Service Agreement: (a) "Payment of the improper and excessive charges"; (b) "Credits owed when Defendant wrongfully imposed and collected charges for services that it failed to provide during a strike by its employees [from] December 2021 to January 2022";[3] (c) "Lost revenues associated with customers cancelling with Plaintiff"; and (d) "Harm to reputation and customer goodwill."  FAC ¶ 22.  Plaintiff seeks compensatory damages in excess of $75,000.  *Id.*

Plaintiff also seeks declaratory relief regarding the parties' respective rights and duties under the Service Agreement.  FAC ¶¶ 25–27.  Concerning the Service Agreement, Plaintiff asserts the following contentions are disputed:  (a) "that Defendant cannot charge

---

[3] The original complaint alleged that "[b]etween approximately December 17, 2021, and January 16, 2022, a number of [Defendant's] employees . . . went on strike.  During this time, [Defendant] failed to haul away waste for many of [Plaintiff]'s customers.  For some locations, [Defendant] provided no service during the strike."  ECF No. 1 at 6, ¶ 22.

a fuel recovery fee if the FRF column for that location is blank and if there is no reference to such a fee in the FRF/EVR CAP column on Schedule A"; (b) "that Defendant cannot charge an environmental fee if the ERF column for that location is blank and if there is no reference to such a fee in the FRF/EVR CAP column on Schedule A"; (c) "that Defendant cannot charge a fuel recovery fee or an environmental fee for a location in excess of the amount or % listed in the FRF/EVR CAP column on Schedule A"; (d) "that increases of rates and fees are capped at 3% annually unless agreed to by both parties"; and (e) that any ambiguity in the Service Agreement as to fees and rates "was created by [Defendant] as the drafter of the agreement and can be explained by evidence of the parties' prior agreements and course of dealing/performance, and usage of trade."  FAC ¶ 25.a–e.

Plaintiff further alleges, and seeks declaratory relief affirming, that despite the liquidated damages clause of Section 14 to the Service Agreement, Section 5.10(A)(3) of the Franchise Agreement affords Plaintiff the right to terminate nearly ten specific customer locations "on 60 days' notice without penalty."  FAC ¶ 25.f–i.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint when the plaintiff has failed "to state a claim upon which relief can be granted."  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  "A complaint should not be dismissed unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997).

"To survive a motion to dismiss, a complaint must contain a sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it contains factual allegations "that allow[] the court to

7

1    draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

2    "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

3    statements, do not suffice." *Id.*  Instead, "for a complaint to survive a motion to dismiss,

4    the non-conclusory 'factual content,' and reasonable inferences from that content, must be

5    plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*,

6    572 F.3d 962, 969 (9th Cir. 2009).  "All reasonable inferences must be drawn in favor of

7    the non-moving party." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010).

8         "Generally, a court may not consider material beyond the complaint in ruling" on a

9    motion to dismiss. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir.

10    2007).  However, the Court "may consider materials incorporated into the complaint or

11    matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir.

12    2010).

13         "If a complaint is dismissed for failure to state a claim, leave to amend should be

14    granted 'unless the court determines that the allegation of other facts consistent with the

15    challenged pleading could not possibly cure the deficiency,' " i.e., "the amendment would

16    be futile." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting

17    *Schreiber Distrib. Co. v. Serve-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

18    **III.   DISCUSSION**

19         Defendant moves to dismiss the Complaint in its entirety.  ECF No. 15.  It argues

20    that Plaintiff fails to allege facts establishing a breach of the Service Agreement on either

21    basis of charging fees or failing to haul waste.  *Id.* at 9–12.  And for Plaintiff's allegations

22    regarding Defendant's purported breach for failing to haul waste, Defendant alleges that

23    Plaintiff fails to plead that it has suffered any damages from Defendant's breach.  *Id.* at 12–

24    13.  Finally, Defendant argues that Plaintiff's claim for declaratory relief fails because there

25    is no controversy regarding the terms of the Service Agreement and Plaintiff lacks

26    "standing to assert any declaratory relief claim based on the" Franchise Agreement.  *Id.*

27

28

at 13.

### A.   Breach Of Contract

Defendant argues that Plaintiff's first cause of action should be dismissed because Plaintiff failed to allege facts necessary for a breach of contract claim.  Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  Defendant challenges only the third element as to Plaintiff's allegation that Defendant raised fees in breach of the Service Agreement, and both the third and fourth elements as to Plaintiff's allegation that Defendant failed to haul waste, deliver bins, and "otherwise respond to customer service issues at multiple locations" in breach of the Service Agreement.  ECF No. 15 at 10–13 (quoting FAC ¶ 15).

Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."  Cal. Civ. Code § 1636.  To the extent possible, the mutual intent of the parties is to be inferred "solely from the written provisions of the contract."  *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003) (quoting *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 18 (1995)).  "[T]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (quoting Cal. Civ. Code § 1641).

Contract terms "are to be understood in their ordinary and popular sense, . . . unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed."  Cal. Civ. Code § 1644; *accord MacKinnon*, 31 Cal. 4th at 647–48.  However, when a provision "is capable of two or more constructions, both of which are reasonable," "the provision will be considered

ambiguous." *MacKinnon*, 31 Cal. 4th at 648.   An ambiguous contract provision is "construed against the drafter," *International Brotherhood*, 957 F.3d at 1042, and requires "a factual determination that precludes dismissal on a motion for failure to state a claim," *Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1066 (E.D. Cal. Jan. 26, 2006) (quoting *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992)).

### 1.   Fees charged in breach of contract

Defendant argues that the terms of the Service Agreement demonstrate that the disputed Fuel Recovery Fees and Environmental Fees, *see* FAC ¶ 20, were within Defendant's discretion because Section 6 "allows Defendant to charge Plaintiff fees 'in its discretion up to the maximum amount allowed by Applicable Law,' " ECF No. 15 at 10–11 (quoting ECF No. 13-1 at 3).   Defendant argues that Plaintiff's assertion that cells in Schedule A column titled "FRF/EVR CAP" were left blank in accordance with Defendant's "custom and practice of exempting most properties brokered by [Plaintiff] from such fees," FAC ¶ 11, *see* ECF No. 13-1 at 7, is impermissibly conclusory and directly contradicted by Section 6, ECF No. 15 at 11.

Plaintiff responds that the terms of the Service Agreement are at least ambiguous, if not explicit, that Defendant's fees exceeded those permitted by the Service Agreement. ECF No. 17 at 10–13.   Plaintiff argues that Sections 6 and 7 conflate the terms "rates," "fees," and "costs" such that there is no clear distinction and that a reasonable interpretation of the two sections would suggest "that the 3% annual cap on increases governs the fees in dispute."   *Id.* at 10–11.   In response to Defendant's position that Plaintiff's allegations about Schedule A of the Service Agreement were impermissibly conclusory, Plaintiff argues that Defendant is improperly suggesting that the Court and the parties disregard Schedule A or interpret it in a light most favorable to Defendant.   *Id.* at 12–13.

Looking at the Service Agreement as a whole, the provisions concerning rates and

fees are ambiguous.  At the outset, the following terms and abbreviations are not defined within the Service Agreement:  rates, fees, costs, FRF, ERF, and EVR.  *See* ECF No. 13-1 (absence).  Plaintiff plausibly alleges that FRF and ERF are defined as "Fuel Recovery Fees" and "Environmental Fees," respectively, FAC ¶ 11, which the Court accepts as true. The Service Agreement does not address the significance of the blank spaces in the "FRF," "ERF," and "FRF/EVR CAP" columns of Schedule A, *see* ECF No. 13-1 (absence), but at this stage of the proceedings the Court accepts as true Plaintiff's factual allegation that Defendant has a "custom and practice of exempting most properties brokered by [Plaintiff] from such fees," *see* FAC ¶ 11.  The Court is permitted to draw such a reasonable inference absent any terms in the Service Agreement suggesting otherwise and given Plaintiff's assertion that the parties "also do business at other customers['] locations through separate agreements," *see* FAC ¶ 9, offering support for Plaintiff's knowledge of Defendant's custom and practice via their course of dealing.  *See, e.g.*, *In re CFLC, Inc.*, 166 F.3d 1012, 1017 (9th Cir. 1999) ("Course of dealing is defined as 'a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.' " (quoting former Cal. Com. Code § 1205, renumbered to Cal. Com. Code § 1303 and amended by 2006 Cal. Legis. Serv. Ch. 254 § 23 (S.B. 1481)) (emphasis removed)).

Sections 6 and 7 do not clarify the relationship between fees, rates, and the 3% cap. Section 6 refers to "rates provided in Schedule A" for Defendant's "Services and equipment,"[4] yet the term "fee," not "rate," is what appears in Schedule A.  ECF No. 13-1 at 3, 7.  Section 6 first lists "fees" along with taxes and other governmental charges as

---

[4] "Services" is defined as "the exclusive right to collect, transport, and dispose of or recycle all non-hazardous solid waste materials (including Recyclable Materials) (collectively, "Waste Materials") at the Locations."  ECF No. 13-1 at 2.

examples of charges that can be "assessed or passed through to" Plaintiff.  *See id.* at 3.  However, the following sentence addresses charges that  can be assessed against Plaintiff—"late payment fees, administrative fees and environmental fees"—purportedly limited only by Defendant's discretion and "Applicable Law."[5]  *Id.* at 3.  Defendant's reply asserts that these two sentences concern different types of fees:  pass-through fees from the government in the first sentence and discretionary fees in the second.  ECF No. 18 at 8.  Defendant's argument that these two fee types "are different because the [Service Agreement] addresses both separately in Section 6," *see id.*, is made without any analysis and strains credulity given that the second sentence immediately follows the first without any transitional terms that would suggest the sentences are discussing different topics; the second sentence begins "[Plaintiff] shall pay *such* fees," ECF No. 13-1 at 3 (emphasis added), allowing for the possibility that the fees just mentioned are still being discussed in the second sentence, *see Such*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/such (last visited July 26, 2023) (defining "such" to mean both "of a kind or character to be indicated" and "of the character, quality, or extent previously indicated or implied"); and presumably the "environmental fees" referenced in the second sentence would be related to governmental fees discussed in the first sentence.

Defendant's conclusory statement that the terms "rates," "fees," and "costs" are "the opposite" of conflated because the terms "are all referenced independently," ECF No. 18 at 7, becomes even less credible upon turning to Section 7 of the Service Agreement.  Section 7 makes clear that rates cannot be increased annually by more than 3% without

---

[5] "Applicable Laws" are defined in the Service Agreement to mean the "applicable federal, state or local laws or regulations."  ECF No. 13-1 at 2.  Neither party directs the Court's attention to any relevant Applicable Law, *see* ECF No. 15 (absence); ECF No. 17 (absence), and the Court is not familiar with any relevant Applicable Law that would influence the Court's contract interpretation analysis.

agreement by both parties, but does not distinguish rates from the fees in Schedule A.  *Id.* Furthermore, Section 7 enumerates seven non-exhaustive reasons for why Defendant may increase rates subject to the 3% annual limit.  *Id.*  Several of the listed reasons include charges that appear to be of the same type that would constitute the discretionary environmental fees and pass-through governmental fees discussed under Section 6: "increased fuel costs," "increased landfill disposal cost," "increased recycling processing & handling cost," and "increased or added fees[] passed through from government entities." *Id.*  When drawing inferences in Plaintiff's favor, *see Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010), presumably any Fuel Recovery Fees and Environmental Fees subject to Defendant's discretion under Section 6, *see* ECF No. 15 at 10–11, would also be subject to the 3% annual limit under Section 7 in as far as they are related to any increased fuel costs, landfill disposal costs, recycling processing and handling costs, and government fees.  In other words, the Service Agreement is facially ambiguous as to which fees—if any—could be charged by Defendant under Section 6 without regard to the 3% limit imposed by Section 7.

Absent any explicit definitions of the above-described terms and any explanation of how the terms interact, the Service Agreement is facially ambiguous.  One plausible interpretation of the Service Agreement is that all fees—even the allegedly discretionary Fuel Recovery Costs and Environmental Fees—are subject to the 3% cap in Section 7. Accordingly, Defendant's motion to dismiss as to Plaintiff's claims alleging breach for fees charged in excess of the 3% cap is hereby DENIED.

### 2.    Other billings errors and service lapses in breach of contract

The Service Agreement affords Defendant "the exclusive right to collect, transport, and dispose of or recycle all non-hazardous solid waste materials" at the locations set out in Schedule A.  ECF No. 13-1 at 2.  "[A]ny failure or delay in performance due to contingencies beyond a party's reasonable control, including strikes," does not constitute

a breach under the Service Agreement. *Id.* at 5. However, "all service gaps must be reasonably corrected within 7 to 10 days of [Plaintiff] notifying [Defendant]" and "[b]illing errors must be corrected within 15 30 [sic] days of notification." *Id.* The Service Agreement provides that Plaintiff may terminate services at particular locations upon written notice. *Id.* at 2.

Defendant argues that Plaintiff failed to allege facts establishing that a breach occurred or that Plaintiff suffered damages arising from Defendant's alleged lapses in service. ECF No. 15 at 11–13. Defendant argues that to the extent that service interruptions occurred during a labor strike, *see* ECF No. 1 at 6 (alleging that "a number of [Defendant's] employees in San Diego County" went on strike between "approximately December 17, 2021 and January 16, 2022"), performance was excused under Section 16 of the Service Agreement, ECF No. 15 at 12. For service interruptions "separate from the labor strike," Defendant argues that Plaintiff's claim must be dismissed for failing to allege damages arising from the alleged breach. *Id.* at 12–13. In other words, Defendant's motion to dismiss argues that to the extent Plaintiff alleges service breaches arising from the labor strike, Plaintiff fails to allege the element of breach, and to the extent that the alleged service breaches are unrelated to the labor strike, Plaintiff fails to allege damages.

Plaintiff responds that dismissal is not warranted under either of Defendant's theories. Plaintiff argues that the Complaint details "allegations of repeated service and billing-related breaches that are *unrelated* to Defendant's employee strike" and which Defendant does not address in its motion to dismiss. ECF No. 17 at 13. Regarding damages, Plaintiff argues it sufficiently alleged that it paid specific invoices with "improper and excessive charges"; that Defendant still owes Plaintiff credits for services billed but not provided during the employee strike; "that Plaintiff lost revenues from customers that canceled service"; and that Plaintiff "suffered general damages including harm to reputation and customer goodwill from Defendant's repeated breaches." *Id.* at 13–14.

### a.    Breaches associated with the strike

"When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent." *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996) (quoting *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2nd Cir. 1929))).  Accordingly, the Court may consider Plaintiff's allegations in its original complaint regarding Defendant's employees going on strike from approximately December 17, 2021 to January 16, 2022.  *See* ECF No. 1 at 6.  The original complaint alleged that Defendant "failed to haul away waste for many of [Plaintiff's] customers" both during and after the strike, *id.*, but did not allege that any billing issues were connected to the strike, *see* ECF No. 1 (absence).  The Riverdale account is the only account in the First Amended Complaint that appears to have experienced service issues related to the strike.  *See* FAC ¶ 21 ("Plaintiff lost this account on or about January 21, 2022, because Defendant failed to provide waste hauling service as required by the" Service Agreement.).  Plaintiff's allegation that "Defendant failed to provide waste hauling service as required by the" Service Agreement for **Riverdale** is not accompanied by any facts suggesting that Defendant was notified of the lapse or that the lapse in service extended longer than the 7 to 10 days permitted for correction by the Service Agreement. *See* ECF No. 13-1 at 5 (concerning Defendant's obligation to rectify service gaps). Accordingly, this allegation is too conclusory to support a cause of action upon which relief may be granted and Defendant's motion to dismiss as to this account is hereby GRANTED.

### b.    Breaches unassociated with the strike

The only other accounts for which Defendant challenges the sufficiency of Plaintiff's allegations of breach of contract are those of Carroll Canyon, Villa Vicenza, Bay Scene, and those associated with the "do not serve" list.  *See* ECF No. 18 at 9–10.

Plaintiff's allegation of breach as to **Carroll Canyon Business Park** is sufficient because Schedule A suggests that Defendant was supposed to provide pickup service on one day each week, *see* ECF No. 13-1 at 7, and yet Plaintiff states that even after submitting "service requests . . . to reduce both the trash and recycling services . . . to once per week," Defendant failed to make the correction, FAC ¶ 20 (ECF No. 13 at 10). Plaintiff alleges that it lost both the **Villa Vicenza** and **Bay Scene** accounts "because Defendant failed to provide waste hauling service as required by the MSA."[6] FAC ¶ 21. Akin to the Riverdale account, these two allegations amount to inadequate, conclusory statements of breach and Defendant's motion to dismiss as to the Villa Vicenza and Bay Scene accounts is hereby GRANTED.[7]

Next, Plaintiff alleges that Defendant breached the Service Agreement when it issued "billing statements that did not include required credits for DNS properties." *E.g.*, FAC ¶ 20 (ECF No. 13 at 11). Schedule A of the Service Agreement includes a list of six accounts under "DNS service," ECF No. 13-1 at 7, which Plaintiff plausibly defines to mean "do not service," FAC ¶ 20 (ECF No. 13 at 11). Plaintiff's allegations for breach as to four of these accounts—**Casablanca HOA**, **Escala HOA**, **Rancho Santa Fe/Groves**, and **Santa Fe Sur/Paco Largo**—are sufficient because they are listed in Schedule A as

---

[6] For reasons that are unclear, the Villa Vicenza, Riverdale, and Bay Scene accounts are listed under only FAC ¶ 21 and were omitted from FAC ¶ 20, where Plaintiff raises the majority of its allegations for breach of contract.

[7] Plaintiff also alleges that Defendant "damaged the doors to the waste chute room" for the Villa Vicenza account and did not "handle" the matter in a timely fashion. FAC ¶ 21. Absent any indication that the Service Agreement addresses damage to private property, *cf.* ECF No. 13-1 at 4 (allocating liability for damage to Defendant's equipment by residents and damage pavement by Defendant, but not other private property), this claim appears to more appropriately arise in the law of tort. The damage also does not appear to have been to Plaintiff's property but to the property associated with the Villa Vicenza account. Defendant's motion to dismiss this claim is also GRANTED.

"DNS" and Plaintiff describes Defendant issuing "billing statements that did not include required credits for [these] DNS properties." FAC ¶ 20 (ECF No. 13 at 11, 15, 26, 28). Plaintiff also alleges breach arising from Defendant failing to credit **Rancho Diegueno Area Residents** on the billing for its association with the DNS list. FAC ¶ 20 (ECF No. 13 at 25). This allegation fails, however, because the Rancho Diegueno Area Residents account does not appear on the DNS list, *see* ECF No. 13-1 at 7 (absence), and Plaintiff does not otherwise allege that it was added to the list at a later time, *see* ECF No. 13 (absence). Accordingly, Defendant's motion to dismiss Plaintiff's allegation of breach of service as to Rancho Diegueno Area Residents—but not Plaintiff's allegation of breach concerning Fuel Recovery Fees and Environmental Fees as to this account—is GRANTED on the basis that it fails to state a claim upon which relief may be granted.

### c.    Adequacy of allegation of damages

The Court next turns to whether Plaintiff has sufficiently alleged damages in relation to the remaining alleged breaches of contract. *See* ECF No. 15 at 12–13. Defendant alleges that Plaintiff failed to plead that "it suffered any damages as a result of [Defendant's] failure to haul waste" for the accounts listed in Paragraph 20. ECF No. 15 at 12. Defendant does not specify a particular account from the scores of accounts listed in Paragraph 20, but is presumably referring to the **Verranzano** account, for which Defendant allegedly "repeatedly failed to provide waste pick up on the scheduled service day and then failed to cure the default, for weeks at a time for some homes." FAC ¶ 20 (ECF No. 13 at 33). Plaintiff does not specifically allege that it was improperly billed for these missed waste pick up days, but does list "[h]arm to reputation and customer goodwill" as one of the damages it has suffered from Defendant's breaches of contract. FAC ¶ 22. If the company Plaintiff contracted with to haul waste for its clients repeatedly failed to haul waste, harm to Plaintiff's reputation and customer goodwill would naturally follow. Such harms are cognizable injuries. *See, e.g., Herb Reed Enters., LLC v. Florida Ent. Mgmt., Inc.*, 736

F.3d 1239, 1250 (9th Cir. 2013) (recognizing that damage to reputation and "goodwill could constitute irreparable harm" in context of preliminary injunction).

Defendant's motion to dismiss for failure to allege damages is therefore DENIED as to the Verranzano account as well as any other account which has not already been dismissed.

### B.   Declaratory Relief

Plaintiff also seeks declaratory relief regarding the parties' respective rights and duties under the Service Agreement.  FAC ¶¶ 25–27.  In relevant parts, Plaintiff seeks declaratory relief regarding the applicability of:  (1) the 3% rate cap in Section 7 of the Service Agreement to the Fuel Recovery Fees and Environmental Fees, and (2) the provision for 60-day notice for termination without penalty in the Franchise Agreement to the liquidated damages clause of Section 14 to the Service Agreement.  FAC ¶ 25.

### 1.   Section 7's rate cap

"The Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, permits a federal court to declare the rights of a party whether or not further relief is or could be sought . . . ." *Green v. Mansour*, 474 U.S. 64, 72 (1985).  Defendant challenges the sufficiency of declaratory relief as to the 3% cap only on the issue of whether there is any live controversy between the parties because it alleges the provisions of the Service Agreement are clear and uncontroverted.  ECF No. 15 at 13.  As discussed in Section III.A.1, *supra*, the relevant provisions in the Service Agreement are both ambiguous and controverted such that Defendant's conclusory statement to the contrary is unpersuasive.  Given the parties' ongoing contractual relationship, declaratory relief may be necessary to help "guide their future conduct" and Defendant's motion to dismiss this request for relief is hereby DENIED.  *See Warren v. Kaiser Found. Health Plan, Inc.*, 47 Cal. App. 3d 678, 683–84 (1975) (explaining that a court should not refuse declaratory relief "where the alternative remedy of suing upon the matured breach is not as 'speedy and adequate or as well suited

to the plaintiff's needs as declaratory relief' " (quoting *Maguire v. Hibernia S. & L. Soc.*, 23 Cal. 2d 719, 732 (1944)).

### 2.    Section 14's liquidated damages clause

Defendant argues that the remaining declaratory relief sought, concerning Plaintiff's rights under the Service Agreement in light of the Franchise agreement, must be dismissed because Plaintiff lacks standing to seek such relief.  ECF No. 15 at 13–14.  Defendant argues that Section 10.7 of the Franchise Agreement precludes Plaintiff from exercising any rights under the Franchise Agreement given that Plaintiff is not a party to the agreement.  *Id.*; *see also* ECF No. 18 at 10–11.  Indeed, Section 10.7 of the Franchise Agreement is explicit that "[n]othing in [the Franchise Agreement], whether expressed or implied, is intended to confer any rights on any Persons other than the Parties to it and their representatives, successors, and permitted assigns."  ECF No. 13-2 at 80.  The Franchise Agreement identifies only Defendant and the County of San Diego as parties to the agreement, *id.* at 8, and Plaintiff does not otherwise allege that it is a party, representative, successor, or assignee, *see* FAC (absence); ECF No. 17 at 15–16 (absence).  Instead, Plaintiff argues that it is seeking declaratory relief concerning the liquidated damages clause of the Service Agreement, the terms of which are subject to the Franchise Agreement.  ECF No. 17 at 15.

To the extent that Plaintiff relies on the Franchise Agreement for the purpose of interpreting the Service Agreement, Plaintiff has failed to allege that the liquidated damages clause of the Service Agreement is ambiguous such that a factfinder would need to consider such extrinsic evidence.  *See MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635 (2003) ("[T]he mutual intention of the parties at the time the contract is formed governs interpretation.  Such intent is to be inferred, if possible, solely from the written provisions of the contract." (citations omitted) (quoting *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 18 (1995)); *accord* Cal. Civ. Code §§ 1636, 1639.  The Service Agreement is clear that if

1   Plaintiff terminates the Service "Agreement before its expiration other than as a result of a
2   breach by [Defendant]," Plaintiff will owe Defendant liquidated damages worth up to six
3   months of monthly service charges.  ECF No. 13-1 at 5.  Plaintiff does not allege that these
4   terms are ambiguous such that the consideration of the Franchise Agreement is necessary
5   to resolve the ambiguity.  *See* FAC ¶ 25.f–i (absence); ECF No. 17 at 14–16 (absence).

6        Plaintiff's Complaint does not invoke third party beneficiary standing under the
7   Franchise Agreement.  *See* FAC ¶ 25.f–h (absence).  To the extent that Plaintiff intended
8   to do so, Section 10.7 of the Franchise Agreement would be grounds to dismiss for lack of
9   such standing.  *See Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019) (requiring "a
10  motivating purpose of the contracting parties" must also be "to provide a benefit to the
11  third party" and such an "action against a contracting party" must be "consistent with the
12  objectives of the contract and the reasonable expectations of the contracting parties" in
13  order to find third party beneficiary standing); *Berkley Assurance Co. v. Olam Ams., Inc.*,
14  No. 1:22-cv-00904, 2023 WL 4238459, at *7–8 (E.D. Cal. June 28, 2023) (finding
15  provision comparable to Section 10.7 of Franchise Agreement "forestalls the creation of
16  third-party rights by the contracting parties" (emphasis removed)).

17       Because there does not appear to be any alleged ambiguity as to the liquidated
18  damages provision or any alleged standing for Plaintiff as a third party beneficiary,
19  Defendant's motion to dismiss as to this claim for declaratory relief is therefore
20  GRANTED.

21  **IV.    CONCLUSION**

22       For the reasons explained above, IT IS HEREBY ORDERED that Defendant's
23  motion to dismiss is GRANTED as to Plaintiff's cause of action for damages arising from
24  breach of contract for the Riverdale, Villa Vicenza, Bay Scene, and Rancho Diegueno Area
25  Residents accounts, but DENIED as to the rest of the accounts.  The Court did not review
26  the sufficiency of the claims which Defendant did not specifically challenge.  Plaintiff is

27

28

hereby granted leave to amend the dismissed claims of breach as well as any allegations of breach which would benefit from additional factual contentions.

IT IS FURTHER ORDERED that Defendant's motion to dismiss is GRANTED as to Plaintiff's request for declaratory relief concerning the liquidated damages clause of the Service Agreement but DENIED as to the declaratory relief concerning the parties' respective rights and duties concerning Sections 6 and 7 of the Service Agreement. Plaintiff is hereby granted leave to amend the dismissed request for declaratory relief.

An amended complaint, if any, shall be filed within 30 days of the date of this Order.

**IT IS SO ORDERED.**

Dated:  August 16, 2023

Hon. Gonzalo P. Curiel
United States District Judge

21

23-cv-582-GPC-KSC